UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Mariann Gobbi, as Personal Representative ) | | |
| of the Estate of Ann Blanchette ) | | |
|     Plaintiff, ) | | COMPLAINT |
| ) | | AND |
| v. ) | | DEMAND FOR JURY |
| ) | | |
| St. Joseph Hospital of Nashua, N.H.; ) | | |
| James Martin, M.D.; Anuradha Shah, M.D.; and ) | | |
| Greater Nashua Emergency Physicians, PC; each ) | | |
| Jointly and Severally ) | | |
|     Defendants. ) | | |
| ) | | |

CASE NO._____

## COMPLAINT

NOW COMES the Plaintiff, Mariann Gobbi, as Personal Representative of the Estate of Ann Blanchette, by and through her attorneys, Law Office of Manning & Zimmerman, PLLC, and sets forth the Estate's Complaint, bringing the following causes of action against Defendants, St. Joseph Hospital of Nashua, N.H.; James Martin, M.D.; Anuradha Shah, M.D.; and Greater Nashua Emergency Physicians, PC; all both jointly and severally, as follows:

## REQUEST FOR JURY TRAIL

1. Plaintiff requests a jury trial on all issues.

## PARTIES

2. Plaintiff, Mariann Gobbi, appears herein in her capacity as the Personal Representative of the Estate of Ann Blanchette. Ann Blanchette resided, at the time of her death, in Massachusetts. Accordingly, Gobbi has been duly appointed as the Personal Representative of the Estate of Ann Blanchette by the Commonwealth of Massachusetts, Middlesex Probate and Family Court, Docket Number MI14P1751EA.

3. Defendant St. Joseph Hospital of Nashua, N.H. (hereinafter "St. Joseph") is, and, at all times relevant hereto, has been a New Hampshire registered non-profit corporation with a principal place of business at 172 Kinsley Street, Nashua, County of Hillsborough, State of New Hampshire. Service of process may be obtained on St. Joseph by serving its

President/CEO: Richard Boehler, MD, St. Joseph Hospital, 172 Kinsley Street, Nashua, Hillsborough County, New Hampshire.

4. Defendant James Martin, M.D., (hereinafter "Dr. Martin"), is a physician licensed to practice in the State of New Hampshire. At all times relevant hereto, Dr. Martin is believed to have been credentialed at, or otherwise associated with, and to have privileges to practice medicine at St. Joseph. Service of process may be obtained on Dr. Martin at his place of employment: 172 Kinsley Street, Nashua, Hillsborough County, New Hampshire.

5. Defendant Anuradha Shah, M.D. (hereinafter "Dr. Shah") is a physician licensed to practice in the State of New Hampshire. At all times relevant hereto, Dr. Shah is believed to have been credentialed at, or otherwise associated with, and to have privileges to practice medicine at St. Joseph. Service of process may be obtained on Dr. Shah at her place of employment: 172 Kinsley Street, Nashua, Hillsborough County, New Hampshire.

6. Defendant Greater Nashua Emergency Physicians, PC (hereinafter known as "GNEP") is and, at all times relevant hereto, has been a New Hampshire professional association with a principal office address of 172 Kinsley Street, Nashua, Hillsborough County, New Hampshire. Service of process may be obtained on GNEP by serving its registered agent: James F. Shortfall, at 380 Lafayette Road, Hampton, New Hampshire.

## JURISDICTION AND VENUE

7. Venue is proper in the Federal District Court, District of New Hampshire pursuant to 28 U.S.C. §1391, as the Defendants are all New Hampshire residents or businesses. Additionally, the injuries and death and events which form the basis of this lawsuit occurred in New Hampshire.

8. Jurisdiction is proper in the Federal District Court, District of New Hampshire pursuant to 28 U.S.C. §1332, due to the diversity of the parties. Specifically, Ann Blanchette was a resident of the Commonwealth of Massachusetts at the time of her death and her Estate, the Plaintiff herein, was opened in the Commonwealth of Massachusetts, Middlesex Probate and Family Court. Defendants are all New Hampshire residents or businesses. Additionally, the damages claimed exceed $75,000 and, accordingly, are within the jurisdictional limit of the Court.

## FACTS

9. Ann Blanchette (hereinafter "Blanchette") was the mother of Mariann Gobbi (hereinafter "Gobbi"), who is the duly appointed Personal Representative of Blanchette's Estate.

10. On August 12, 2011, Blanchette, 59 years old at the time, was visiting her grandchildren at Gobbi's home.

11. Blanchette had spoken with Gobbi earlier in the week about neck pain she had been experiencing and, when Gobbi arrived home around 6:00 p.m., Gobbi inquired as to whether her mother's pain had improved.

12. When Blanchette reported she was having a lot of pain in her neck, including pain that radiated through her right shoulder, Gobbi and Blanchette agreed that Blanchette should be taken to the emergency room.

13. Gobbi and Blanchette arrived at St. Joseph's Emergency Room at approximately 6:30 p.m., where Blanchette was subsequently seen by both Dr. Martin and Dr. Shah.

14. After waiting in the waiting room, the records indicate Blanchette was triaged at 7:10 and admitted to the emergency room at 7:21 p.m.

15. A History and Physical taken in the emergency room recorded that Blanchette suffered from high blood pressure, high cholesterol, type II diabetes, and was prescribed insulin, but that this medication had not been taken for several months due to financial constraints.

16. The History and Physical also recorded that Blanchette's pain had started in her right arm and was now on the right side of her neck and radiating into her right shoulder.

17. Dr. Martin completed the Emergency Department Record, wherein he correctly reported that Blanchette was suffering from neck pain that had commenced in the right arm, and noted that Blanchette rated her pain at 8 out of 10, and had no precipitating trauma.

18. Dr. Martin did not further inquire about Blanchette's medical history, which would have resulted in him learning that both of her parents had suffered from heart issues later in life, and that her sister had recently suffered a heart attack with symptoms similar to those experienced by Blanchette.

19. Blanchette did report to a man believed to be a nurse that her sister had very recently suffered the same type of pain in her neck and arm, and had been diagnosed as having a heart attack.

20. Although the neck, shoulder and/or arm pain described, combined with her medical history, should have alerted Dr. Shah, Dr. Martin, the nursing staff, and/or the other medical staff at St. Joseph of a possible myocardial infarction, this diagnosis was ignored and no testing was done to rule out this possibility. Instead, it was simply concluded that Blanchette's pain was musculoskeletal in origin.

21. At Blanchette's request, a blood sugar test was performed in the emergency room and Blanchette's levels were found to be elevated to 420, which Dr. Shah concluded was the result of diabetic ketoacidosis for which she prescribed an insulin drip and IV hydration.

22. Although diabetic ketoacidosis can be symptom of a myocardial infarction, this possible diagnosis was again ignored by Dr. Martin, Dr. Shah, the nursing staff, and/or the other medical providers at St. Joseph, and no testing was done to rule out this possibility.

23. Blood tests drawn in the emergency room showed that Blanchette's white blood cell count was elevated to 19,400 and her neutrophils were 82%, yielding an absolute neutrophil count was 16,000 – well above the upper normal limit of 6,130.

24. Although an elevated neutrophil count is yet another symptom know to correlate with a myocardial infarction, neither Dr. Martin, Dr. Shah, the nursing staff, nor any other medical provider at St. Joseph even consider this possibility, and no testing was done to rule out this possibility.

25. Much later in the evening, believed to be as a result of the shift change, a new nurse came into Blanchette's room, reviewed her chart, and raised, for the first time, the issue of an EKG -- indicating that Blanchette's age and symptoms made her (the nurse) think Blanchette might be having a heart attack.

26. An EKG was performed at 12:38a.m. on August 13, 2011, about six hours after Blanchette's arrival at St. Joseph and over five hours after Blanchette's admission in the emergency room, revealing that Blanchette was suffering a myocardial infarction.

27. Despite the EKG findings, Blanchette was not immediately placed on a heart monitor, nor was she transferred to a room that would allow for immediate application of a defibrillator if needed.

28. The records reflect that at 12:52 a.m., while a nurse was starting to place a heart monitor onto Blanchette, her heart stopped.

29. Although after her arrest Blanchette was moved to another room where a defibrillator was available, efforts to revive her were not successful and Blanchette was pronounced dead at 1:22 a.m. on August 13, 2011.

30. While consoling Gobbi, the nurse that had been treating Blanchette hugged her and, while doing so, admitting "this never should have happened."

31. At all times relevant the Defendants acted separately and/or jointly in concert with each other in providing the medical care to Blanchette that is the subject of this action.

32. On August 12 and 13, 2011, Dr. Martin, Dr. Shah, the nursing staff, and all other medical providers at St. Joseph all failed to timely diagnose, or to even perform the tests to properly diagnose, Blanchette's medical condition, resulting in her untimely death.

33. On August 12 and 13, 2011, St. Joseph failed to have policies and procedures in place for the prompt and timely diagnosis for potentially fatal medical emergencies – including myocardial infarctions and other heart related emergencies, St. Joseph failed to ensure

that such policies and procedures were followed, and/or the medical professionals that treated Blanchette failed to follow such policies and procedures, resulting in her untimely death.

34. On August 12 and 13, 2011, Blanchette sought emergency medical care room the Defendants, and relied on the Defendants to provide competent medical care to timely diagnose and treat her condition. The Defendants, jointly and/or separately, failed in their obligations to Blanchette, resulting in her untimely death.

35. BY REASON OF THE AFORESAID, the Estate of Ann Blanchette is entitled to payment of damages by the Defendants. All of such damages exceed the minimum jurisdictional limits of the Federal District Court.

## COUNT I
### Medical Negligence– Dr. Martin and Dr. Shah

36. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1- 35 above as if each was set forth here in its entirety.

37. On August 12, 2011, Blanchette presented herself to the emergency room where her care was assumed by the medical professionals working at St. Joseph, including Dr. Martin and Dr. Shah, relying on their medical training, care, and expertise to properly and promptly diagnose and treat her medical condition.

38. Dr. Shaw and Dr. Martin each had a duty to exercise the degree of skill, care, diligence, knowledge, and learning ordinarily exercised and possessed by the average qualified physician, taking into account the existing state of knowledge in the practice of medicine generally and the field of emergency medicine specifically, including but not limited to the duty to identify the signs and symptoms of a myocardial infarction and to take timely, prompt, and appropriate responsive actions to protect Blanchette from injury and death.

39. Yet, nevertheless, Dr. Martin and Dr. Shah each disregarding his/her aforesaid duties, failed to exercise the degree of skill, care, diligence, knowledge, and learning ordinarily exercised and possessed by the average, qualified physician, taking into account the existing state of knowledge in the practice of medicine generally and the field of emergency medicine specifically, including the failure to identify the signs and symptoms of a myocardial infarction and to take timely prompt, appropriate, responsive actions to protect Blanchette from injury and death.

40. The harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life, and burial/funeral expenses, were the direct, proximate, and foreseeable result of Dr. Shah and/or Dr. Martin's negligence, carelessness, and unskillfulness.

41. WHEREFORE, the Plaintiff prays judgment against Defendant Dr. Martin and Defendant Dr. Shah for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

## COUNT II
### Medical Negligence – St. Joseph

42. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1 – 41 above as if each was set forth here in its entirety.

43. At all times relevant, St. Joseph represented and held itself out to the community, and more particularly to Blanchette, to provide the highest quality of care and skill in medical care and treatment, and further represented to Blanchette that she would receive knowledgeable, competent, skilled, and qualified care from persons duly qualified to render such care.

44. St. Joseph had a duty to exercise the degree of skill, care, diligence, knowledge, and learning ordinarily exercised and possessed by the average qualified hospital, taking into account the existing state of knowledge in the practice of hospital medicine generally and the field of emergency room care, including but not limited to the duty to identify the signs and symptoms of myocardial infarctions, the duty to call such conditions to the attention of the Dr. Martin and Dr. Shah, the duty to take appropriate administrative action through the nursing chain of command to compel intervention if they failed to act, and to otherwise act to protect Blanchette from the risks of a myocardial infarction, including death.

45. St. Joseph also had a duty to have policies and procedures in place, and to ensure that such policies and procedures were followed, for the prompt and timely diagnosis for potentially fatal medical emergencies – including myocardial infarctions and other heart related emergencies.

46. Yet nevertheless, St. Joseph, wholly disregarding its duties aforesaid, failed to exercise the degree of skill, care, diligence, knowledge, and learning ordinarily exercised and possessed by the average, qualified hospital, taking into account the existing state of knowledge in the practice of hospital medicine generally and the field of emergency room services, including, but not limited to, the failure to have and/or enforce adequate policies and procedures, the failure to identify the signs and symptoms of a myocardial infarction, the failure to call such conditions to the attention of Dr. Martin and/or Dr. Shah, the failure to take appropriate administrative action through the nursing chain of command to compel intervention when they failed to act, and the failure to otherwise act to protect Blanchette from the risks of injury and death posed by a myocardial infarction.

47. The harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life, and funeral/burial expenses, were the direct, proximate, and foreseeable result of the negligence, carelessness, unskillfulness, lack of training, and lack of procedures at St. Joseph.

48. WHEREFORE, the Plaintiff prays judgment against Defendant St. Joseph, for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

## COUNT III
### Respondent Superior – St. Joseph

49. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1 - 48 above as if each were set forth here in its entirety.

50. Defendant St. Joseph is vicariously liable for the negligence and reckless conduct of its actual or apparent agents committed in the scope of their agency, joint venture and/or employment.

51. Upon information and belief, defendants Dr. Martin and Dr. Shah were and are credentialed and/or have privileges to perform medical services at St. Joseph. Furthermore, upon information and belief, St. Joseph maintains some control over defendants Dr. Martin and Dr. Shah.

52. St. Joseph also employees and/or maintains control over the nursing staff and other medical professionals that provided care to Blanchette on August 12 and 13, 2011.

53. On or about August 12, 2011, Blanchette presented herself to the emergency room at St. Joseph and met Dr. Shah, Dr. Martin, the nursing staff, and the other medical professionals involved in her care for the first time. None of these individuals ever identified or otherwise indicated that they were not employees, servants, or agents of St. Joseph.

54. Plaintiff reasonably believed, based on the conduct of the defendants, that Dr. Martin, Dr. Shah, the nursing staff and the other medical professionals involved in Blanchette's care were authorized to act on behalf of St. Joseph.

55. St. Joseph also employees and/or maintains control over the nursing staff and other medical professionals that provided care to Blanchette on August 12 and 13, 2011.

56. For all the foregoing reasons, St. Joseph is vicariously liable for the acts of Dr. Martin, Dr. Shah, the nursing staff, and the other medical professionals who rendered care to Blanchette on August 12 and 13, 2011, and, accordingly, is liable for the harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life.

57. WHEREFORE, the Plaintiff prays judgment against Defendant St. Joseph for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

## COUNT IV
### Negligent Employment –St. Joseph

58. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1 - 57 above as if each was set forth here in its entirety.

59. At all times relevant, St. Joseph represented and held itself out to the community, and more particularly to Blanchette, to provide the highest quality of emergency care, and further represented to Blanchette that she would receive knowledgeable, competent, skilled, and qualified care from persons duly qualified to render such care.

60. On or about August 12, 2011, Blanchette submitted herself for treatment at St. Joseph, where their employees, agents, servants, or contractors, who, separately and/or jointly in concert with the other named Defendants herein, negligently, carelessly, and without regard for the health and well-being of Blanchette, failed to meet the standard of care in treating Blanchette, and otherwise negligently failed to exercise due care.

61. Defendant St. Joseph had a duty to give proper orders or make proper regulations, employ trained, qualified, and competent persons and instrumentalities, and supervise the activity of its employees, servants, agents, or apparent agents.

62. With respect to the previously described negligent and reckless conduct of its servants, employees, or agents, St. Joseph breached its duty, and was negligent or reckless in its training, hiring, or supervising of its servants, employees, agents, or apparent agents.

63. The harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life, were the direct, proximate, and foreseeable result of the negligence, carelessness, and unskillfulness, of the employees, agents and contractors of St. Joseph.

64. WHEREFORE, the Plaintiff prays judgment against Defendant St. Joseph for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

## COUNT V
### Negligent Employment – GNEP

65. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1 - 64 above as if each was set forth here in its entirety.

66. Upon information and belief, Dr. Martin is an employee of GNEP.

67. On or about August 12, 2011, Blanchette submitted herself for treatment to St. Joseph, where she was treated by Dr. Martin in the emergency room. Dr. Martin, separately and/or jointly in concert with the other named Defendants herein, negligently, carelessly, and without regard for the health and well-being of Blanchette, failed to meet the

standard of care in treating Blanchette, and otherwise negligently failed to exercise due care.

68. Defendant GNEP had a duty to give proper orders or make proper regulations, employ trained, qualified, and competent persons and instrumentalities, and supervise the activity of its employees, servants, agents, or apparent agents.

69. With respect to the previously described negligent and reckless conduct of its servants, employees, or agents, GNEP breached its duty, and was negligent or reckless in its training, hiring, or supervising of its servants, employees, agents, or apparent agents.

70. The harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life, were the direct, proximate, and foreseeable result of the negligence, carelessness, and unskillfulness, of the employees, agents and contractors of GNEP.

71. WHEREFORE, the Plaintiff prays judgment against Defendant GNEP, for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

## COUNT VI
### Respondent Superior – GNEP

72. Plaintiff repeats and incorporates herein all of the factual allegations in Paragraphs 1 - 70 above as if each were set forth here in its entirety.

73. Defendant GNEP is vicariously liable for the negligence and reckless conduct of its actual or apparent agents committed in the scope of their agency, joint venture and/or employment.

74. Upon information and belief, defendant Dr. Martin was an employee of GNEP at all times relevant hereto.

75. Upon information and belief, at all times relevant hereto Dr. Martin was acting within the scope and course of his employment with GNEP.

76. For all the foregoing reasons, GNEP is vicariously liable for the acts of Dr. Martin, Dr. Shah, and the other medical professionals who rendered care to Blanchette on August 12 and 13, 2011, and, accordingly, is liable for the harms and losses suffered by Blanchette, including but not limited to death, physical and mental anguish, emotion distress, loss of enjoyment of life.

77. WHEREFORE, the Plaintiff prays judgment against Defendant St. Joseph for the above-described harms and losses, in an amount that is to be determined by a jury, together with costs and interest.

Respectfully Submitted,
Mariann Gobbi, as Personal Representative of
the Estate of Ann Blanchette

By and through the Estate's attorneys,
Law Office of Manning & Zimmerman, PLLC


Dated:  June 20, 2014                    By: ___ /s/ Anna Goulet Zimmerman
                                         Anna Goulet Zimmerman, Esq.
                                         N.H. Bar # 18407
                                         87 Middle Street
                                         Manchester, NH 03101
                                         603-624-7200
                                         anna@manningzimmermanlaw.com